■ In the Matter of PATROLMEN'S BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK, INC., Respondent, v CITY OF NEW YORK et al., Appellants. [741 NYS2d 506] —Order and judgment (one paper), Supreme Court, New York County (Stanley Parness, J.), entered on or about April 21, 2000, which granted petitioner's application for a permanent injunction restraining respondents from unilaterally awarding special assignment pay to police officers without first negotiating with petitioner concerning the criteria and procedures for making such awards, and for a permanent injunction restraining respondents from implementing an announced Detective Specialist Program without negotiating that program with petitioner, unanimously reversed, on the law, without costs, the injunction vacated and the petition dismissed.

This appeal requires our analysis of two alternative programs devised by the New York City Police Department as vehicles for merit awards to exemplary police officers. The first program was the Special Assignment Program proposed in June 1998, which was found by the New York City Board of Collective Bargaining (BCB) to be subject to collective bargaining and therefore could not be unilaterally implemented by the Police Department. The second program, the Detective Specialist Program, also was implemented, in December 1999, without collective bargaining. Implementation of this latter program, which was not challenged before the BCB, was enjoined by the Supreme Court on the ground that it was substantially similar to the first program.

The question which engages us is whether the two programs were materially different. If they are, any challenges to the second program must be presented before the BCB, which has exclusive non-delegable jurisdiction to hear improper labor practice claims (Civil Service Law § 205 [5] [d]) over which Supreme Court lacks original subject matter jurisdiction (*Uniformed Firefighters Assn. v City of New York*, 79 NY2d 236; *Caruso v Ward*, 146 AD2d 486).

To the extent we can evaluate the programs from the record, the Special Assignment Program was, by its very nature,

devised to allow the Department to quickly, and unilaterally, shift personnel from routine tasks to more specialized tasks, warranting increased remuneration because of the nature of the work, but to also shift officers back again to routine duty. Such assignments seem inherently transient. Patrolmen's Benevolent Association (PBA) has an understandable interest in negotiating the terms and conditions of such assignments and, equally important, criteria for making and unmaking individual assignments if additional remuneration is to be involved. That was the import of the BCB order, with which we do not, nor could we, take issue. The Detective Specialist Program, though, is different in one important respect so that, notwithstanding some parallels between the programs which are aptly noted by the motion court, it is qualitatively different. In the Special Assignment Program, merit increases are paid to employees in the same position, while in the Detective Specialist Program employees are designated to a different position based on merit. The designated officers in the Detective Specialist Program will be promoted to the rank of detective. The new rank correlates with a different and higher salary grade, and a different compensation ladder. In contrast with the earlier program, the promoted officers in the Detective Specialist Program, upon reaching top pay as Detective Specialists, would realize over $6,000 in increases in their salaries which, as in the earlier proposed program, would be pensionable. The newly promoted detectives are represented by a different bargaining unit, the Detectives Endowment Association (DEA), which has an existing collective bargaining contract with the Department governing the terms and conditions of employment affecting its members. An officer thus promoted to the rank of detective after three years attains a kind of tenure as such and cannot be demoted absent good cause or another such criterion established in that contract. Hence, even if a similar number of officers are likely to be affected (and given the Department's apparent intent to expand the program, that is not certain), and even if there is seemingly comparable initial funding for the respective programs, and even if each program envisages patrol rather than investigative or other duties, and even if a common motive to recognize merit may be discerned in the alternative programs, nevertheless they appear to be different programs, with different consequences for the Department and the designated officers and, obviously, for the PBA (which may well lose some 2,000 members). However, an evaluation of the merits of the Police Department's claim that such a promotional program is not subject to collective bargaining, and PBA's claim that such "promotions" are a sham devised to evade such a

procedure, must be determined by BCB. We analyze this distinction between the programs only for the purpose of concluding that the BCB order, which, in any event, only specifically addressed the Special Assignment Program, did not by its terms bar implementation of the Detective Specialist Program and must first be submitted to that entity before any court action may be entertained. Concur—Nardelli, J.P., Tom, Mazzarelli, Ellerin and Lerner, JJ.